## JAMES B. RICE *vs.* MARGARET DONALD ET AL.

*When Enrolled Decree Cannot be Varied Upon Petitioner—Proceeds of Land Sold Under Partition Decree Claimed by a Petitioner—Laches.*

The general rule is that an enrolled decree cannot be vacated or varied upon a mere petition filed in the cause, not alleging mistake or surprise.

After a decree for the sale of land for the purpose of partition among the heirs of the deceased owner has been made and become enrolled and the land sold, one of the parties to the cause cannot except to the audit and file a petition setting up an exclusive title to the whole proceeds of sale upon the ground that the land had been purchased by the deceased owner with money to which he was equitably entitled.

A decree in a partition suit determined, as between the parties, that A had died intestate, seized of the land described in the bill, that her heirs were the persons therein named, and that the land should be sold and the proceeds divided among the said heirs. After this decree became enrolled and the land was sold, the administrator of the estate of a former husband of A, who had died forty years previously, the administrator being also a party to the cause in his own right as an heir of A, filed a petition alleging that upon the death of her said husband, A had taken possession, without right, of all his property, real and personal, and converted the same to her own use, and that she had purchased the land in question with a part of this property. The prayer of the petition was that the petitioner be made a party to the cause and that the trustees who sold the land under the decree be directed to pay the proceeds to him. *Held,*

1st. That even assuming the allegations of the petition to be true, such claim cannot be asserted by a petition filed after enrolled decree, the petitioner being a general creditor of A, without a lien on the land and not claiming under any of the parties to the cause.

2nd. That a demurrer to the petition was also properly sustained because of the indefinite character of its allegations. It does not describe the property alleged to have been owned by A's former husband at the time of his death nor the circumstances under which the proceeds of that property was applied by A to the purchase of the land sold under the decree.

3rd. That the claim of the petitioner is also barred by laches.

A bill was filed for the partition among her heirs of land owned by a woman who died intestate, and a decree for a sale was made and became enrolled. The parties to the cause were the children of the

woman by two marriages. A son by the first marriage subsequently filed a petition alleging that after the institution of the suit and before decree, he discovered that the land in question had been purchased with money belonging to his father's estate and that he was entitled to the whole proceeds of sale, and asked that the same be audited to him. *Held*, that since he remained inactive until after the decree became enrolled he is now barred by laches.

Appeal from the Circuit Court for Frederick County (MOTTER, J.)

The cause was submitted to the Court on briefs by:

*S. A. Lewis*, *P. F. Pampel* and *A. S. Brown*, for the appellant.

*Arthur D. Willard* and *D. Princeton Buckey*, for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court for Frederick County in equity sustaining a demurrer to and dismissing a petition of the appellant which sought in effect to revise a final decree of the Court after its enrollment.

The bill was filed by several of the heirs at law of the late Margaret Donald against the remainder of her heirs for a sale of a certain tract of land of which she died seized for purposes of partition. The Fredericktown Savings Institution which held a mortgage on the property was also made a defendant to the suit.

The bill alleged that Margaret Donald had acquired the land in question by a conveyance to her from one Edward Duval in 1879 and held it until March 26th, 1899, when she died intestate seized and possessed of it; that at the time of her death her heirs at law consisted of James Rice, who was an adult son by her former husband, Stephen Rice, and the other persons, except the bank, who were made parties to the suit and were grouped in the bill according to their respective stocks of descent, and that the bank held a mortgage for $3,500 on the land. The bill also alleged that the land was not suscep-

tible of division in kind and that it would be to the interest and advantage of all parties concerned to have it sold and the proceeds divided. ·

The defendants answered the bill, James Rice admitting in his answer the allegations of the bill and consenting to the passage of a decree as therein prayed·reserving such rights against the proceeds of sale as he then had in the land. There was some controversy between the husband, James Donald, and the heirs at law over their respective interests in the property the particulars of which do not appear in the record, but on January 18th, 1902, a final decree was passed directing a sale of the land and the distribution of the proceeds under the direction of the Court. After the land had been sold under the decree·and the sale ratified the auditor on July 29th, 1902, returned an account distributing the net balance of the proceeds of sale, after deducting the costs of suit and the amount of the·mortgage, among the surviving husband and heirs at law of the intestate.

James Rice, sometimes called James B. Rice in the proceedings, the adult son of the intestate filed exceptions in his own right and as administrator of the estate of his father, Stephen Rice, to the distribution of the net balance made by the auditor stating as the ground of his exception that the ·funds in Court, arising from the sale of land alleged to be the property of his mother, Margaret Donald, were in fact part of the property of which his father, Stephen Rice, died seized and possessed and should have been audited to him as the sole heir at law of his father. No testimony was taken in support of these exceptions.

On August 18th, 1902, six months after the enrollment of the decree, James B. Rice also filed a petition in the case in his capacity of administrator alleging that his father, Stephen Rice, had died intestate in 1864 seized and possessed of real and personal property and leaving surviving him his widow Margaret and the petitioner as his only child and heir at law. That no letters of administration were taken out on his estate but that his widow Margaret, afterwards Margaret Donald,

without warrant or authority sold and disposed of his entire estate and converted it into money and applied it to her own use without ever making any return or report of it to any Court. That she "invested part the said estate in a house and lot of ground on North Eutaw street in Baltimore City and after her marriage with James Donald proceeded by loans and mesne conveyances to sell and re-invest a part of said estate in Baltimore County   *   *   and that a part or portion thereof she invested in several houses and lots of ground on Mount street in said city of Baltimore which said property was by an exchange and sale sold and proceeds of such sale invested in the real estate mentioned and described in these proceedings" and sold under the decree and the proceeds brought into Court for distribution. That the petitioner was quite young at the death of his father and reposing trust and confidence in his mother he never knew until the taking of testimony in the present case that his father left any property. That as soon as practicable after discovering these facts he took out letters of administration on his father's estate and that he is as such administratior entitled to have distributed to him the entire net proceeds of the land sold under the decree in this case. The prayer of the petition is that the petititioner may be made a party to the cause as administrator and that the trustees may be directed to pay to him the net proceeds of sale or such part thereof as the Court may find him entitled to and for further relief.

Certain of the parties to the suit demurred to this petition and on December 16th, 1902, the Court below passed the order appealed from overruling the exceptions, sustaining the demurrer and dismissing the petition.

James B. Rice in the exceptions filed in his individual capacity claims the entire net proceeds of sale in his own right as the only child and heir of his father, while in the petition and exceptions filed by him as administrator of his father's estate he claims the same fund as assets of that estate, but as he nowhere suggests that his father left any creditors, the result is that the claim in both forms must in equity be regarded

as made in the petitioner's own interest. We will however consider his attitude to the case in both capacities in which he appears upon the record.

His rights under the exceptions filed in his individual capacity must be tested from the standpoint of an original party to the suit after the passage and enrollment of the final decree for the sale of the land for the purpose of partition. That decree, construed, as it should be, with reference to the issues presented by the pleadings, determined as between the parties to the suit that Margaret Donald died intestate seized of the land described in the bill and that her heirs at law were the persons named as such in the bill and that their relationship to each other was as therein stated and that the land should be sold and the proceeds divided under the Court's direction among the persons thus ascertained to be her heirs at law according to their respective interests therein. *Pfeltz* v. *Pfeltz*, 1 Md. Chy. 455; *Brown* v. *Thomas*, 46 Md. 640. After the decree was enrolled no party to the case could, by exceptions to the auditors account or by petition or any similar proceeding, vary or alter its effect.

"After a decree has been enrolled the Court will not entertain any application to vary it except upon consent of all parties, or in respect of matters which are of course." *Lovejoy* v. *Irelan*, 19 Md. 57. It is then as a general rule no longer subject to be called in question by mere petition. "Being enrolled it must be allowed to stand for what it purports to be on its face, until revised or reversed in a more solemn and formal manner than can be done on petition." *Burch* v. *Scott*, 1 Gill & John, 393; *Pfeltz* v. *Pfeltz*, 1 Md. Chy. Dec. 455. The only proper modes recognized by law, for reversing or annulling a decree or decretal order after enrollment, in the absence of surprise or irregularity in obtaining it, are by bill of review for errors apparent on the face of the proceedings or for some new matter discovered since the order or decree passed, or by original bill for fraud. *Tomlinson* v. *McKaig*, 5 Gill, 256; *Thruston* v. *Devecmon*, 30 Md. 217; *Downes* v. *Friel*, 57 Md. 535; *Brown* v. *Thomas*, 46 Md. 640.

In *Pfeltz* v. *Pleltz, supra,* after a decree for the sale of land for the purposes of partition among heirs at law had been passed and enrolled and the land sold, one of the defendants filed a petition in the case setting up an exclusive right in himself and his children to the whole proceeds of sale upon the ground that his father had in his lifetime conveyed the land in trust for the petitioner and his children. The Court held that the decree could not be vacated in that manner and dismissed the petition saying in the opinion "It may be said however that this is not an application to vacate the decree but to give the fruits of it a different direction from that which, upon the proceedings as they stood at the time when it was passed, they would take; that is instead of distributing the proceeds of sale among the parties according to their rights and interests as displayed upon the face of the proceedings the whole amount shall be given to one of those parties for life with remainder to persons who were not parties to the decree. But the decree contained no reservation of equities or for further directions and was of course final upon the rights of the parties and the Court therefore in this way had no more power to change the rights thus settled than it would have to open the enrollment and vacate the decree."

Nor do the allegations of the petition show that the petitioner in his capacity of administrator of his father's estate had any such interest in the land sold or the proceeds of its sale as would entitle him to intervene in this litigation. He does not claim under any parties to the suit nor does he show himself entitled to a lien upon the land sold. On the contrary he sets up and relies upon distinct matters not within the scope of the bill but hostile to and destructive of the title of all parties to the proceeding. Assuming the truth of the indefinite allegations of his petition charging his mother with having converted his father's real and personal property to her own use after his death and with having ultimately invested a portion thereof in the purchase of the land sold under the decree in this case ; the result at most would be that he would have been entitled to maintain an action against her for the conver-

sion of such portion of her husband's estate as consisted of personalty, or if he could definitely trace the proceeds of any such personalty into the purchase of the land in question he might, if not debarred by laches, have filed an original bill asking to have the land while still in her possession charged with a resulting trust in his favor to the extent of the proceeds of the converted personalty entering into its purchase. But for the reasons which we have already mentioned no such claim could be asserted by a mere petition filed in the present case after final decree.

As a general creditor of his mother without a lien upon the land it is clearly settled that he has no standing to intervene in this case. *Postal Tel. Co.* v. *Snowden*, 68 Md. 118, 123.

Furthermore the appellant's petition is demurrable because of the vague and indefinite character of its substantial allegations. It does not describe or identify the real or personal property which it avers that the petitioner's father owned at the time of his death, nor state the times, amounts or circumstances of the supposed transmutations of investment by which it charges that a portion of the proceeds of said property was finally applied by the widow to the purchase of the land sold under the decree in this case. The allegation that the widow wrongfully sold her husband's real and personal estate after his death and converted the proceeds to her own use is self contradictory because she could not have given any title to his real estate or to his personal estate other than those articles if any thereof the title to which passed by delivery. This Court has repeatedly held that allegations of transactions, as fraudulent in their character as those by means of which it is charged that the widow acquired title to the land sold under this decree, cannot be made in a general or indefinite way but must be specific in their character as Courts of equity derive their jurisdiction from the facts alleged in the bill and not from the terms used in setting out the facts. *Grove* v. *Rentch*, 26 Md. 377; *Townshend* v. *Duncan*, 2 Bl. 45; *Wenstrum Co.* v. *Purnell*, 75 Md. 113, 120.

We also think that the allegations of the petition show the

appellant to have been guilty of laches in asserting his claim. He alleges that his father, Stephen Rice, died in 1864, almost forty years ago and does not allege that he ever made any inquiry or investigation since his father's death to discover what estate, if any, he owned at the time of his death. He avers that he was but two years old when his father died and that he reposed trust and confidence in his mother and did not know until the taking of the testimony in the present case that his father died possessed of any property. He does not however assert that his mother concealed from him the fact of the ownership of property by his father, nor does he aver at what time or times she sold his father's property or made the alleged conversion of the proceeds to her own use, or what was his age at the times of such alleged sales and conversions. Admitting that he first discovered the facts during the taking of the testimony in the present case he remained silent and inactive until after the decree had been passed and become enrolled although he must have been aware of the progress of the case as he had been a party to it in his own right from its first institution and was entitled under the terms of the decree to share in the proceeds of the sale made in pursuance thereof. He has not shown such diligence in asserting his rights as to entitle him to the favorable consideration of a Court of equity even if he had otherwise shown himself entitled to relief.

For the several reasons which we have mentioned the order appealed from must be affirmed.

*Order affirmed with costs.*

(Decided June 30th, 1903.)