MADDOX *v.* DISTRICT SUPPLY, INC. ET AL.

[No. 151, September Term, 1959.]

32

*Decided March 15, 1960.*

*Motion for rehearing and reconsideration of opinion, for certain amendments to the opinion and for other and further relief filed April 14, 1960, denied May 19, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ.

*Luther Robinson Maddox,* pro se.

*F. Archie Meatyard, Jr.,* with whom were *Meatyard & Carlin,* on the brief, for District Supply, Inc., one of the appellees.

*Ferdinand Mack,* with whom was *Arthur J. Hilland,* on the brief, for Raymond O. Shroyer and Mary K. Shroyer, the other appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Montgomery County entering a money judgment for $11,500.00 in favor of District Supply, Inc. against Raymond O. Shroyer and wife. The appellant is a lawyer formerly employed by the Shroyers, who was permitted to intervene in the equity proceeding.

The proceeding, Equity No. 17,356, was initiated by District Supply, Inc., a Pennsylvania corporation, on May 25, 1954. Maddox entered a special appearance in the case on July 30, 1954. After a demurrer to the bill was sustained, an amended bill was filed on November 26, 1954, and a demurrer to this was subsequently overruled. The amended bill sought to impress a trust upon real estate in Montgomery County owned by the Shroyers, because of the alleged misappropriation of funds by Shroyer, while in the employ of District Supply, Inc.

About July 1, 1954, the Shroyers had received an offer of some $17,000.00 for their property in Montgomery County from Arthur B. Jebens, but the Fidelity Investment and Title Co., Inc. declined to pass the title because of the pending equity suit. By letter to the title company, dated July 20, 1954, the Shroyers agreed to "leave all moneys over and above the sales commission, First Trust balance and settlement charges in escrow with you, pending final disposition of

Equity No. 17,356 * * *." The letter also stated that "if upon final settlement or disposition of the above Equity suit there is found, either by settlement between the parties or by court order, that any of the proceeds thus held by you in escrow is due to be paid to the undersigned, we hereby irrevocably assign Five Hundred Dollars ($500.00), or so much of $500.00 as may be found due us or at our disposal, to Luther Robinson Maddox, to be paid by you from any moneys coming to us as a result of such final disposition of the Equity case." This assignment was approved by the title company on September 13, 1954. The record further shows that the settlement sheet dated July 15, 1954, bore a notation of the "Parties Agreement" that the balance of the sales price was "to be held pending final disposition of Equity No. 17,356 and to be disbursed according to settlement agreement or court order."

On July 20, 1955, the Shroyers executed to Maddox in Washington, D. C. an "assignment for benefit of creditors." This was in the form of an irrevocable assignment of all their right, title and interest in the proceeds of the real estate "held in escrow, pending the final settlement of an equity suit, No. 17,356 * * *." It contained the clause: "This assignment is for the benefit of all our creditors and for those remaining of the Ray Supply Company. Whatever balance there may be, after all creditors have been paid and satisfied by our attorney, the said Luther Robinson Maddox, that amount will be returned to us." It is conceded that this document was never recorded, and that no bond was ever filed in connection therewith.

On November 21, 1955, the Shroyers executed to Maddox in Washington, D. C. a "power of attorney" authorizing him to "receive, sign for and release, all moneys due, or to become due us, by the Fidelity Investment and Title Co., Inc. * * * Bethesda, Maryland, which moneys are held in escrow by the said Title Company pending the final settlement of Equity Case No. 17,356, * * *."

The appellant alleges that he conducted extensive negotiations for the settlement of the equity suit, and performed services in connection with an alleged criminal prosecution

against Shroyer in Washington, D. C. However, in September, 1956, the Shroyers terminated his employment and employed new counsel. On December 18, 1956, by leave of court, Maddox struck out his appearance of record in the equity case, but on the same day filed a petition to intervene in the proceeding in his own right. Leave was granted. He contended in that petition, as he contends now, that the Shroyers had in fact divested themselves of all interest in the escrow fund by the execution of the assignment for the benefit of creditors and the power of attorney mentioned above, and that he, and he alone, was in a position to control the pending litigation. No reliance was placed, then or now, upon the conditional assignment of five hundred dollars. He contended, and now contends, that at the time of the purported termination of his employment he had earned legal fees far in excess of the total fund, and that the power was coupled with an interest and irrevocable.

New counsel succeeded in effecting a settlement of the equity case, and an indictment for embezzlement against Shroyer in Washington, D. C. was dismissed on February 11, 1957, upon motion of the United States Attorney, granted by the United States District Court for the District of Columbia, upon a representation that the civil case had been settled and that proof to support the criminal charge was lacking. On February 28, 1957, on joint petition of District Supply, Inc. and the Shroyers, the Equity Court in Montgomery County was informed that the parties had reached an agreement of settlement, whereby District Supply, Inc. should receive $11,500.00 in full settlement of its claim. Maddox, as intervenor, contested the Shroyers' right to make the settlement, because of the assignment and power of attorney previously executed in his favor. But, after hearing, the Chancellor entered the money judgment appealed from on August 12, 1959. The Chancellor pointed out that the title company was not a party to the proceeding.

A preliminary question arises upon the appellees' motion to dismiss the appeal. Subsequent to the entry of appeal to this Court, the Chancellor fixed the amount of supersedeas bond, but the appellant declined to file bond. Thereafter, the

judgment appealed from was paid by the title company. The appellees urge that the appeal has become moot, relying upon Maryland Rule 817 and *Basiliko v. Welsh,* 219 Md. 602, *Lowe v. Lowe,* 219 Md. 365, *Sawyer v. Novak,* 206 Md. 80, and cases there cited. In those cases, however, it was recognized that the failure to file bond did not necessarily cut off the right of appeal. The cases involved exceptions to judicial sales made under mortgage foreclosures, and it was pointed out that the relief prayed was not available because the *res* in each case had been transferred to a *bona fide* purchaser. In *Herman v. Mondawmin Bldg. & Loan Co.,* 145 Md. 480, 490, and *Lenderking v. Rosenthal,* 63 Md. 28, 38, it was recognized that if the transferee was not a *bona fide* purchaser, in the sense that there was collusion or unfairness in the accomplishment of the purchase, the purchaser's title could still be impugned. In *Chapman v. Thomas,* 211 Md. 102, 110, a specific performance case, we held that the Chancellor properly fixed the penalty of a supersedeas bond and declined to void a deed executed to the purchaser in default of bond. Nevertheless, we did not hold that the delivery of the deed rendered the case moot, but affirmed the Chancellor on the merits.

In the instant case the mere fact that a large portion of the fund held in escrow has been paid to District Supply, Inc. in satisfaction of its judgment would not, we think, render the case moot. This appellee is still in court, and amenable to court orders, in the event of a reversal. In the absence of estoppel, and in the exercise of the court's discretion, it might still be liable for restitution. Cf. *Redwood Hotel, Inc. v. Korbien,* 197 Md. 514, 517. Moreover, it was fully on notice of the appellant's claim of title to the fund, and of his claim that the settlement was in violation of his rights and against public policy. It could hardly claim to be a *bona fide* purchaser. We think the motion to dismiss the appeal should be denied.

The appellant relies strongly upon the assignment for the benefit of creditors, which, unlike the power of attorney, was expressly declared to be irrevocable. We think, however, that this assignment was wholly ineffective to pass title to

the fund in whole or in part, because of the failure to record the instrument, or to file bond as required by Code (1957), Art. 16, sec. 175. See Maryland Rule 1372 b 2; *O'Toole Tire Co. v. Gaither, Inc.,* 216 Md. 54, 58; and *Briley v. Pinkston,* 215 Md. 417, 423. The assignment in the instant case was for the benefit of all the creditors of the Shroyers. It was not an assignment of specific sums for the benefit of particular creditors, as in *United Rys. & Elec. Co. v. Rowe,* 97 Md. 656. We think that case is readily distinguishable on the facts. The fact that the assignment in the instant case did not purport to convey all the property of the debtor would not seem to be material. See *Hoopes v. Knell,* 31 Md. 550, 555. See also the note to *Kettlewell v. Stewart,* 8 Gill 472 (p. 370 of Brantly's ed.). Even if the validity of the assignment should be tested by the law of the District of Columbia, on the theory that it was executed there and concerned a chose in action, it would be equally ineffective for one or more of the reasons stated in *Briley v. Pinkston, supra* (p. 425).

The appellant further contends that the power of attorney was coupled with an interest, and hence was irrevocable. The basis of the claim is that it was executed as security for legal fees earned, and to be earned. It has been held in many cases that a right to compensation is not such an interest as to fall within the rule stated. See 2 Am. Jur., *Agency,* § 84, and notes 97 A.L.R. 923; 28 A.L.R. 2d 1243, 1276, 1283. Cf. *Piper v. Wells,* 175 Md. 326, 331. Moreover, an attorney at law has no common law or statutory lien for services rendered. *Ashman v. Schechter,* 196 Md. 168, 176. In *Boyd v. Johnson,* 145 Md. 385, 389, it was said: "The great weight of authority sustains the right of a client at any time before judgment, if, acting in good faith, to compromise, settle or dismiss his cause of action without his attorney's intervention, knowledge or consent. The attorney in such case, under mere contract of employment, acquires no vested interest in the suit, and his authority is revocable at the will of the client." See also *Palmer v. Brown,* 184 Md. 309, 316, and *Switkes v. John McShain, Inc.,* 202 Md. 340, 348. Cf. *Parks v. Skipper,* 164 Md. 388, 396.

In the instant case the record does not disclose the reasons

for the termination of the appellant's employment. It is not suggested that the equity case was then settled or concluded, and there is no evidence of bad faith on the clients' part. It may also be noted that the escrow agreement, and all the other documents in the case, dealt with the disposition of the balance, if any, that might become due to the client after the conclusion of the pending equity suit "by settlement between the parties or by court order." It was clearly contemplated that a substantial part of the escrow fund would become payable, in one way or another, to District Supply, Inc. It is difficult to conceive what interest the appellant could have in disbursements made by his former clients to a third party whose potential rights in the fund were recognized from the beginning, at a time when the fees now claimed, except possibly a fee of five hundred dollars, were not even earned. As a simple contract creditor, the appellant had no standing to become a party to the suit, or to oppose the judgment rendered. *Postal Telegraph Cable Co. v. Snowden,* 68 Md. 118, 123; *Rice v. Donald,* 97 Md. 396, 402. At most, it would seem that he was remitted to an action in *quantum meruit* against his former clients for payment for services rendered up to the time of his discharge. On any theory of the case, the judgment in favor of Districts Supply, Inc. must be affirmed.

Since we hold that the appellant had no standing to contest the settlement, we do not reach the questions posed as to its legality or propriety. We likewise find it unnecessary to discuss the contention that Chief Judge Schnauffer abused his discretion in assigning Judge Pugh to conduct the final hearing in the case, during the absence of Judge Anderson.

*Order affirmed, with costs.*