300 F.2d 1
 Luther Robinson MADDOX, Appellant,
v.
FIDELITY INVESTMENT & TITLE CO., Inc., and James C.
Christopher, As Secretarythereof and Individually, F. Archie
Meatyard, Jr., Individually and as Attorneyfor District
Supply, Inc., et al., Owen E. Osborne, Raymond O. Shroyer,
andMary K.Shroyer, His Wife, Appellees.
 No. 8461.
 United States Court of Appeals Fourth Circuit.
 Argued Jan. 9, 1962.
Decided March 5, 1962.
 
 1
 Luther Robinson Maddox, pro se.
 
 
 2
 James J. Doyle, Jr., Baltimore, Md. (Sherbow & Sherbow, Hecht & Hecht, and Isaac Hecht, Baltimore, Md., on the brief), for appellees Raymond O. Shroyer and Mary K. Shroyer.
 
 
 3
 B. Conway Taylor, Jr., Baltimore, Md. (Due, Nickerson, Whiteford & Taylor, Baltimore, Md., on the brief), for appellees Title Co., Christopher, Meatyard and Osborne.
 
 
 4
 Before HAYNSWORTH and BOREMAN, Circuit Judges, and PREYER, District judge.
 
 
 5
 L. RICHARDSON PREYER, District Judge.
 
 
 6
 The plaintiff Maddox, an attorney, established an attorney-client relationship in April, 1954, with the defendants Shroyer. Plaintiff had defendants Shroyer execute three contracts of employment and various other documents purporting to protect plaintiff's fees for professional services. When plaintiff failed satisfactorily to conclude their legal difficulties in a reasonable time, defendants Shroyer discharged him in September, 1956. Plaintiff subsequently filed this suit in the United States District Court for the District of Maryland.
 
 
 7
 The case was tried before Judge W. Calvin Chesnut and a jury. At the conclusion of all the evidence on Counts 1, 2 and 3 which charged defendants Shroyer with breach of contract, the jury returned a verdict for defendants. At the conclusion of plaintiff's case on Count 4, which charged a conspiracy to breach contracts; Count 5, which charged an illegal conversion of escrow funds; and Count 6, which charged a conspiracy to commit an unlawful abuse of process, the trial court granted defendants' motions for directed verdicts.
 
 
 8
 Plaintiff has appealed from the judgments entered on these verdicts. The numerous errors assigned by plaintiff are discussed for convenience under three headings: 1) whether the jury's verdict for defendants on Counts 1, 2 and 3 was contrary to the law and evidence; 2) whether the trial court committed error in granting defendant's motions for directed verdict on Counts 4, 5 and 6; 3) whether the trial court abused its discretion in making rulings prior to and during the trial.
 
 
 9
 An understanding of the questions involved and the relationship of the various parties to the suit requires this statement of the facts. Defendant Shroyer in 1954 was an officer and employee of District Supply, Inc. which was represented by F. Archie Meatyard, Jr. Early in that year, certain discrepancies appeared in the books of that company, and its officials felt that Shroyer had wrongfully taken funds from that Company in amounts estimated to be upwards of $20,000. As counsel for the Company, Meatyard instituted suit in equity against Shroyer and his wife. This suit sought to impress a trust upon real property of the Shroyers, on the grounds that the funds Shroyer had taken had gone into the property.
 
 
 10
 After the institution of the suit, an opportunity to sell the property at a favorable price presented itself to the Shroyers, and they contracted to sell it. Fidelity Investment and Title Company, Inc. examined title at the instance of the purchaser. James C. Christopher, secretary of the Title Company and another defendant in the case, upon reviewing the examination, was not willing to pass title in view of Meatyard's suit against the Shroyers. When informed about the matter, and learning that the price was a favorable one, Meatyard, in behalf of his client, agreed that the transaction might go through provided that the net proceeds of settlement be retained by Title Company in escrow pending the outcome of the litigation between District Supply and its former employee, Shroyer. Settlement on this basis occurred in July, 1954.
 
 
 11
 At approximately this time the Shroyers employed the plaintiff Maddox in connection with this litigation. It proceeded very slowly with voluminous hearings, motions, and legal maneuvers over the following two years. Shroyer, having been discharged by District Supply, commenced a business of his own, which during this two year period, got into financial difficulties, in connection with which he employed Maddox. Likewise, toward the end of the two year period, a criminal indictment was handed down against Shroyer, and he employed Maddox in this matter. During the period of Maddox's employment, he was paid in fees sums which Maddox states to have aggregated $2,125.00 and which Shroyer contends amounted to considerably more.
 
 
 12
 In August, 1956, the Shroyers, having become concerned over the apparent inability of Maddox to resolve their difficulties, determined to procure other counsel. They sought the advice and recommendation in this respect of their minister, Owen E. Osborne, another named defendant. Osborne recommended an attorney at their request.
 
 
 13
 Counsel recommended by Osborne was unable or unwilling to accept the representation of the Shroyers, as were several other attorneys to whom Shroyers were referred by this attorney and others. Ultimately, in August or September, 1956, Shroyer obtained new counsel and discharged Maddox in writing. In a matter of months new counsel successfully reached an agreement under which District Supply's claim against the Shroyers was settled by a consent judgment for $11,500.00 and the indictment against Shroyer was dismissed.
 
 
 14
 During his employment, however, Maddox had obtained from the Shroyers various writings, on the basis of which he contends that he was entitled to the entire escrow fund. Upon his discharge he asserted entitlement to something in excess of $30,000.00 in additional fees. In October, 1956, as he struck his appearance from the case broght by District Supply, he simultaneously intervened therein as a party, asserting his claim to the fund.
 
 
 15
 On March 15, 1960, in the case of Maddox v. District Supply, Inc., 222 Md. 31, 158 A.2d 650, the Court of Appeals of Maryland stated that he had no claim to the fund by reason of his various instruments hereinbefore referred to.
 
 
 16
 In 1957 Maddox instituted a suit in the District of Columbia against most of the defendants in the present case and others, including some of counsel who had participated in the original litigation, on substantially the grounds asserted in the instant case. The present defendants were removed as parties to that litigation because of non-residence in the District of Columbia, but voluminous depositions were taken.
 
 
 17
 In 1959, the instant suit was brought. Its first three counts are against the Shroyers and are predicated upon Maddox's various instruments of employment and powers of attorney, and judgments are sought against the Shroyers for fees in the amount of $43,405.13, plus interest. The fourth count charges all of the defendants with a conspiracy to cause the breach of Maddox's contracts of employment with the Shroyers and seeks damages in excess of $200,000.00. The fifth count charges Christopher, the Shroyers and Title Company with illegal conversion of the escrow fund, seeking $17,000.00 from those defendants. The sixth and last count charges all parties to the suit other than Osborne with conspiracy to commit malicious abuse of process, and seeks damages of $42,000.00.
 
 THE JURY VERDICT OF COUNTS 1, 2 and 3
 
 18
 These counts sought damages for breach of contract. The defense denied the contracts were fair and reasonable under the circumstances. Testimony took five trial days. The Court submitted the case to the jury under a charge that was not excepted to any which was completely fair to plaintiff. The trial judge properly instructed the jury that an attorney's agreements as to fees must be fair and reasonable, in view of the confidential relationship which exists between attorney and client. The court further instructed the jury as to the factors to be considered in determining whether the agreement was fair and reasonable. The jurors were also instructed that if they found the agreements were not fair and reasonable, they should award the plaintiff such amount over and above what he had already been paid that seemed to them to be fair and reasonable under all the evidence. The jury had the benefit of Maddox's testimony in voluminous detail as to the work he had performed and found that he had been adequately compensated by sums he had received prior to his discharge. This lays the matter to rest, once and for all. Where, as here, there is an evidentiary basis for the jury's verdict, the appellate court cannot be asked to substitute its judgment for that of the jury. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).
 
 THE DIRECTED VERDICT ON COUNTS 4, 5 and 6
 
 19
 There counts alleged a conspiracy between the Shroyers, Rev. Osborne and a number of Maryland and District of Columbia lawyers and illegal conversion of funds. The court directed a verdict for defendants at the conclusion of plaintiff's case.
 
 
 20
 The testimony indicated that the Shroyers determined in 1956 to discharge plaintiff as their counsel. Prior to terminating that relationship, they discussed employment of new counsel with Rev. Osborne, their minister. Based on his initial recommendation and references from lawyer to lawyer, all of whom were unavailable for employment, the Shroyers were in brief contact with four attorneys. Finally after the Shroyers formally discharged plaintiff, Arthur J. Hilland accepted employment. In a short time he concluded all litigation pending against them.
 
 
 21
 Maddox charged that the four attorneys, Rev. Osborne, the Shroyers and the attorneys representing District Supply Co. acted in illegal concert to bring about his discharge and to maliciously abuse process. After two days' testimony plaintiff rested his case, and the court granted motions for directed verdicts at the conclusion of oral argument.
 
 
 22
 Twenty witnesses were called, many of them attorneys, in an effort to show the conspiracy. An examination of the record, however, indicates that nowhere does there appear a shred of evidence to support plaintiff's charges. There was no contact between any of the people involved other than the incidental chain of contact concerning employment of new counsel. The evidence of a conspiracy that plaintiff has advanced amounts to no more than that the Shroyers employed another lawyer. We are not faced here with the question of whether the trial court property directed a verdict where there was conflicting evidence. Here, there was absolutely no evidence to justify the accusation of unlawful action.
 
 
 23
 Neither was there any probative evidence of an illegal conversation. None of the testimony indicated Maddox had any right, title or interest in the escrow fund which amounted to $17,000. Moreover, Maddox had already tested his claim to that fund and had obtained a judicial determination that he was not entitled to any of the proceeds. Maddox v. District Supply, Inc. et al. (1959), 222 Md. 31, 158 A.2d 650. In view of this ruling, plaintiff has completely failed to establish any conversion of funds to which he had title or the right to possession.
 
 DISCRETIONARY RULINGS BY THE TRIAL JUDGE
 
 24
 The remaining thirteen questions raised in this appeal involve alleged abuse of discretion in rulings by the trial judge prior to and during the course of the trial. These range from the court's denial of plaintiff's motion for a new trial to such matters as the court's refusal to permit the use of the blackboard during the presentation of his case, (and distinguished from its use as an aid in closing argument). Seriatim discussion of these questions would not be fruitful. Careful analysis of each assignment of error in the light of the applicable law proves no abuse of discretion occurred.
 
 
 25
 Plaintiff has had his 'day in court' in the form of seven trial days before a jury of his peers and many hours spent in hearings involving procedural and discovery matters. He has had the benefit of a careful and considerate trial judge who conducted the trial according to the highest traditions of the judiciary. The obligations that American justice owes to every litigant have been fully satisfied. The Shroyers attempted to discharge the plaintiff some five and a half years ago; they are now entitled to their peace.
 
 
 26
 The judgments of the lower courts are affirmed.
 
 
 27
 Affirmed.