SILVER AND COOPER, TRUSTEE *v.* BENSON ET AL.

[No. 224, September Term, 1961.]

554

*Decided February 19, 1962.*

*Motion for rehearing filed March 19, 1962, denied March 23, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*Samuel Cooper* and *Daniel N. Silver* for appellants.

*George W. Della* and *Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

Robert C. Benson, eighty-three years of age, his wife and daughter, Kathryn Benson, were the owners of a tract of land laid out in building lots, which they agreed to sell to Twin

Development Company, Inc., for a total price of $28,300. They received down payments totalling $2,500, and at the settlement on May 13, 1959, received two checks from Thomas P. Burgee, President of the purchasing corporation, drawn on his personal account, one in the sum of $18,300, and the other in a sum to cover an adjustment of rent and taxes. They executed and delivered a deed to the property, which was subsequently recorded, as was a purchase money mortgage for $7,500, representing the balance of the purchase price. Both checks were returned with the notation "no such account", but the vendors took no immediate action because of Burgee's promises to make good, which he never performed.

The appellant, Silver, advanced $19,000 to Burgee in exchange for a mortgage of $22,000 which was recorded on August 5, 1959. Foreclosure proceedings were instituted on October 23, 1959. Burgee had also purported to convey some of the lots to other parties. On November 23, 1959, the Bensons filed a bill in equity praying the court to assume jurisdiction over the property, to determine the rights of the various parties, and to determine whether the mortgage to Silver was a *bona fide* transaction, and "what consideration, if any, passed for said mortgage". The bill also prayed an injunction to prevent the respondents from selling or encumbering the property, and to prevent Cooper, trustee under the Silver mortgage, from making the foreclosure sale "now scheduled for December 1, 1959." The chancellor signed an order to show cause. Both Silver and Cooper answered, claiming that the mortgage was *bona fide*, and for a good consideration. None of the other respondents answered, and as to them the bill was taken *pro confesso*. The record does not disclose that any injunction was issued, but the scheduled sale was not held, and apparently the pending foreclosure proceeding was dismissed.

The record shows that there was an extended hearing on the merits of the case. On January 13, 1961, the chancellor filed an opinion in which he found as a fact that the checks given by Burgee were known by him to be drawn on non-existing accounts, and that Burgee took improper advantage of his relationship with Miss Benson, in a fraudulent scheme to obtain the property. Hence he declared that the deed should

be set aside, and the title revested in the Bensons. He found, however, that Silver had advanced money upon the faith of the conveyance and without knowledge of the fraud, that the undisputed evidence showed that there was consideration for the mortgage, $19,000, paid to Burgee and $3,000, "retained as a service and legal fee", and that the mortgage "was a *bona fide* transaction for a valid consideration." He stated that he would sign a decree setting aside the deed, subject, however, to the legal operation and effect of the mortgage.

Apparently, counsel on each side submitted decrees. The form of decree submitted on behalf of Silver and Cooper stated that the mortgage was valid to the extent of $22,000. The form of decree submitted on behalf of the Bensons declared the mortgage valid only to the extent of $19,000. This latter form of decree was signed on February 28, 1961, but amended by interlineation dated March 17, 1961, to declare the mortgage valid to the extent of $20,000.

The appellants then filed a petition, claiming that the decree was contrary to the court's opinion, and alleging that after the date of the filing of the opinion they had instituted a foreclosure proceeding before another judge of the same court. They prayed a dissolution of the restraining order incorporated in the decree. The court declined to modify its decree, and an appeal to this Court was duly entered. Thereafter, a decree was passed submitting the matter to an auditor, and his report of the sum due Silver under the prior decree was filed and accepted by the parties. On the basis of a mortgage indebtedness of $20,000, with interest and allowances for expenditures and rents collected, the amount due was fixed at $22,087.58. A decree was signed providing that if said sum was not paid into court before September 5, 1961, the trustees named in the prior decree should proceed with public sale of the mortgaged property. This sum was duly paid into court. Thereupon, an order was passed discharging the trustees.

The appellees moved to dismiss the appeal on the ground that the appellants failed to comply with Maryland Rule 828 b. The appellants deny that they are raising any factual issue, and that it was necessary to print those portions of the record to which the appellees refer. We think there is at least room

for a difference of opinion as to whether the portions omitted are reasonably necessary for a determination of the legal questions presented. Accordingly, we deny the motion.

The appellees contend that the case had become moot, because the appellants filed no supersedeas bond, and the money has been paid into court. The appellants contend that the chancellor had no authority to stay the foreclosure proceeding they instituted after the filing of the opinion, and before the injunction granted in the decree appealed from was issued. They rely strongly upon Maryland Rule 1391 g 2 (now Rule W76 b), formerly Code (1957), Art. 66, sec. 16. This Rule provides that "[a]n injunction to stay any sale, or any proceedings after a sale, of mortgaged property pursuant to this Rule shall not be granted unless the party praying such injunction is also a party to the instrument creating the mortgage lien, or shall claim under such party a right to or interest in the mortgaged property, derived and accruing after the recording of the mortgage." The Rule then sets forth certain conditions precedent:

> "(1) The petition alleges under oath whether petitioner admits any amount to be due and payable under the mortgage as of the date the petition is filed, and if so the petitioner has paid such amount into court with the filing of the petition, and
>
> "(2) The petition alleges under oath facts, which shall be set forth in detail, showing that—
>
> (i) the mortgage debt and all interest due thereon have been fully paid, or
>
> (ii) there is no default in the mortgage, or
>
> (iii) some fraud was used by the mortgagee, or with his knowledge, in obtaining the mortgage."

We think the Rule is inapplicable under the facts in the instant case. It seems to be predicated primarily upon a situation where a party seeks to intervene in a pending foreclosure proceeding to enjoin a sale, or proceedings after a sale. In the instant case there was a pending proceeding to set aside a deed and a mortgage on the ground of fraud, to which the mortgagee was a party. At the time the mortgagee filed his

foreclosure proceeding the matter had not been finally adjudicated. True, the chancellor had indicated that the mortgage was not invalid, but he had also indicated that the mortgagor acquired no title to the property, and the deed to it was invalid on grounds of fraud. It is a familiar doctrine that equity will afford complete relief. 1 Pomeroy, *Equity Jurisprudence* (5th ed.), § 241; *McKeever v. Realty Corp.*, 183 Md. 216, 224. Particularly in cases of fraud, the equity court may mould its decree to fit the circumstances. *American Sugar-Refining Co. v. Fancher,* 40 N. E. 206, 208 (N. Y.). The appellants were not at liberty to initiate another proceeding before another judge under the circumstances, and their action could not oust the court of complete jurisdiction over the parties before it. The Rule quoted is based upon the principle that "he who seeks equity must do equity", *Talbott v. Laurel Bldg. Ass'n,* 140 Md. 565, 569. Here the shoe is on the other foot.

We think there is no force in the appellees' contention that the case is moot. The operation of the decree was not stayed by the filing of a bond, but that would not in itself cut off the right of appeal. The cases where appeals were dismissed as moot are generally cases where the relief has become impossible, as where the property in question has been sold to a *bona fide* purchaser on the faith of the decree, and not where the parties are still in court and amenable to court orders. *Maddox v. District Supply, Inc.,* 222 Md. 31, 36 and cases cited. Moreover, the second point urged by the appellants, that the decree appealed from incorrectly fixed the amount due under the mortgage, is still open.

The theory upon which the chancellor allowed the mortgage claim to stand only as to the amount actually advanced, plus an allowance of $1,000, for fees or costs incurred, was that the mortgage claim was usurious as to the excess. The appellant contends that the defense of usury is not available because (1) a corporation cannot plead usury and (2) there was no proper plea of usury. We find no merit in either contention. Code (1957), Art. 23, sec. 125 provides: "No corporation shall interpose the defense of usury in any action." It may well be, as the appellants argue, that this same

bar would apply to any persons claiming through or under a corporate mortgagor, or even necessitous incorporators. See *Rabinowich v. Eliasberg,* 159 Md. 655, and cases in the note, 63 A.L.R. 2d 924. But that is not the situation in the instant case. The appellees do not claim through or under the mortgagor, but as the defrauded owners of the property subject to the mortgage. The mortgagee can claim no title to the property, as such, for the title of his grantor has been declared to be a nullity. Hence, his right to compensation depends solely upon equitable considerations. It is not a question of corporate right, or of pleading.

It is well settled that in circumstances where a deed is set aside for fraud, a mortgagee not a party to the fraud is entitled to the protection afforded a *bona fide* purchaser by a court of equity, to the extent of his interest. But as was said in *Houston v. Wilcox,* 121 Md. 91, 99, paraphrasing earlier cases, "a Court of Equity will deal with the conveyance sought to be vacated on special terms, and will allow the instrument to stand as security for the money actually paid by the grantee." We find no intimation in the cases that a court of equity would enforce a usurious contract as against an individual setting up a defense in his own right. Of course, the mortgage is valid as to the amount actually advanced, and that has been duly paid into court. See *Powell v. Hopkins,* 38 Md. 1.

*Decree affirmed, with costs.*