GENERAL INVESTMENT FUNDS REAL
ESTATE HOLDING COMPANY ET AL.
*v.* GILDENHORN ET AL.

[No. 165, September Term, 1970.]

*Decided December 15, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Thomas Searing Jackson,* with whom were *Thomas*

*Penfield Jackson, Edward Terhune Miller* and *Jackson, Gray & Laskey* on the brief, for appellants.

*James P. Salmon,* with whom was *Hal C. B. Clagett* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant General Investment Funds Real Estate Holding Company discovered it was holding a second lien on a tract of Maryland real estate because the release of a prior lien was forged. To protect itself, it then made an attempt to show that the prior lien was not a valid debt. We shall affirm the decree of the chancellor (Mathias, J.) who held the debt of that lien to be valid.

This matter can be best understood by reference to the cast of characters:

Rollin Hills Apartments, Inc. (Rollin Hills) — a Maryland corporation which owned land in Prince George's County included in the two deeds of trust we shall mention.

Constas G. (Gus) Basiliko (Basiliko)—a real estate operator in the Washington suburban area who was the guiding light of Rollin Hills.

General Investment Funds Real Estate Holding Company (GI)—an Ohio non-profit corporation holding title to real property for certain pension funds of The General Tire and Rubber Company and the secured party in a deed of trust from Rollin Hills.

William Gildenhorn (Gildenhorn) — described as "retired" from men's furnishings, grocery and liquor businesses in the Washington area, maker of the loan which GI challenges.

A. Slater Clarke and Herman Cohen—trustees of the deed of trust which secured Gildenhorn.

It will also be helpful to refer to the dates of certain events:

December 1, 1965—deed of trust from Rollin Hills

to Clarke and Cohen to secure payment of note of same date assigned to Gildenhorn.

December 14, 1965—deed of trust recorded among land records of Prince George's County.

April 28, 1966—date of forged release relative to this deed of trust.[1]

July 27, 1966—deed of trust from Rollin Hills to secure payment of note of same date to GI.

August 3, 1966—the forged release recorded.

August 10, 1966—the GI deed of trust recorded.

December 12, 1966 — proceeding filed by Clarke and Cohen to foreclose deed of trust securing Gildenhorn loan.

January 4, 1967 — petition of Clarke and Cohen filed to expunge forged deed of release from the land records.

January 5, 1967—GI's motion for leave to intervene and intervening petition filed. It attacked the adequacy of the consideration for the note. *It did not raise any question relative to the applicability of the District of Columbia "loan shark" act to this transaction.*

January 19-20, 1967—hearing held. It was for this hearing that a subpoena *duces tecum* was served upon Gildenhorn. The chancellor was not satisfied with the fact that Gildenhorn did not produce the note at this hearing. The note ultimately was produced and filed in this proceeding.

January 27, 1967—notice by GI of its intent to depose "Security Bank".

February 14, 1967—argument relative to order to protect and Gildenhorn permitted to intervene.

February 21, 1967—GI's bill of complaint to quiet title filed based upon District of Columbia "loan shark" act.

March 13, 1967—order of the United States District Court in the Rollin Hills bankruptcy mat-

---

1. Basiliko was convicted of forging Clarke's name to this instrument.

ter enjoining further action in these proceedings.

May 8, 1968—U. S. District Court injunction dissolved.

September 18, 1969—hearing held, testimony presented and cases consolidated.

The decree of Judge Mathias pursuant to Maryland Rule 605 a stated in part, "[T]he Court makes an express determination that there is no just reason for delay, and expressly directs the entry of judgment in accordance with this final decree * * *."

The $230,000.00 note in question was made to Rose M. Holmes, secretary to Clarke, the attorney who prepared the instrument. It was by her assigned to Gildenhorn. Consideration for the loan was $165,456.16 in cash and cancellation of a $27,500.00 note in another Basiliko corporation, which note was then in default. The secretary was a "straw party" without interest in the matter.

We are presented two questions. The first is whether the deed of trust is void under the District of Columbia "loan shark" act, 26 D. C. Code, §§ *601 et seq.* (1967 ed.). The second is whether the chancellor erred in decreeing that the Gildenhorn note should be allowed in the audit for its stated face value plus interest.

## I

Under the facts developed in this case we are not obliged to make a determination as to whether this transaction is governed by the law of the District of Columbia, where the deed of trust was executed, or by Maryland law, where the land lies and the jurisdiction in which the case was tried. It does not clearly appear where the note was executed. In the view we take of this case this makes no difference.

The pertinent portion of the District of Columbia law upon which GI relies is 26 D. C. Code, § 601 (1967 ed.). It provides:

"It shall be unlawful and illegal to engage in the District of Columbia in the business of loan-

ing money upon which a rate of interest greater than six per centum per annum is charged on any security of any kind, direct or collateral, tangible or intangible, without procuring a license; and all persons, firms, voluntary associations, joint-stock companies, incorporated societies, and corporations engaged in said business shall pay a license tax of five hundred dollars per annum to the District of Columbia * * *."

GI concludes that the Gildenhorn deed of trust would fall if it can establish that Gildenhorn was engaging "in the District of Columbia in the business of loaning money upon which a rate of interest greater than six per centum per annum [was] charged", that he had no license, and that this transaction took place within the District of Columbia. It reasons that in such a situation under District of Columbia law "there is no valid and enforceable debt", thereby making the deed of trust "a lien to secure nothing", citing *Indian Lake Estates, Inc. v. Ten Individual Defendants,* 121 U. S. App. D. C. 305, 350 F. 2d 435 (1965), *cert. den.,* 383 U. S. 947 (1966); *Royall v. Yudelevit,* 106 U. S. App. D. C. 1, 268 F. 2d 577 (1959); and *Hartman v. Lubar,* 77 U. S. App. D. C. 95, 133 F. 2d 44 (1942), *cert. den.,* 319 U. S. 767 (1943), in support of its conclusion.

Gildenhorn is a Maryland resident. The deed of trust was executed in Clarke's District of Columbia office. It is agreed that the money passed in Maryland. The note admittedly brings in a rate of interest in excess of six per cent per annum.

Within the contention relative to the District of Columbia law, GI claims the chancellor erred when he "repeatedly restricted inquiry directed to establishing that Gildenhorn made loans to other people", in his refusal to admit into evidence "some ninety-nine (99) notes for collection" held by Security Bank in the District of Columbia "over four or five years", and in his action on "Gildenhorn's failure to respond to subpoena to produce records".

GI called Gildenhorn as a witness. In response to inquiry about records he had been directed to bring with him, he said he did not keep any records and that his only records for income tax purposes came from Security Bank where he placed his notes for collection, the bank notifying him when it collected interest. He said he loaned money "[a]bout once or twice a year, or sometimes in two years". He had made "possibly two or three different deals with [Basiliko]", all made through Clarke's office.

The chancellor was concerned about Gildenhorn's failure to produce the note in question in compliance with the subpoena *duces tecum*. He directed its production and it was filed in the proceeding. No issue was made by GI at that time relative to other matters mentioned in the subpoena. Hence, it has no basis for complaint to us because of Gildenhorn's non-compliance, even if those items were relevant to the issues then before the court.

Gildenhorn's testimony was confined to the January 20 hearing. GI takes exception to the refusal of the chancellor to permit inquiry at that hearing into loan transactions Gildenhorn might have had with others. In the posture of the case at that time there was no allegation in the pleadings before the court that Gildenhorn was involved in transactions in violation of the District of Columbia statute. The only allegation was "inadequate consideration" for the note. Hence, it was, as the chancellor ruled, immaterial at that time whether Gildenhorn had been involved in other transactions in the District of Columbia. Gildenhorn was *not* put on the stand as a witness at any subsequent hearing.

Clarke testified at the January 19-20 hearing. In response to a question for "a fair estimate of the number of times, transactions in which [he] dealt with Mr. Gildenhorn in connection with his lending money", Clarke said:

"It would be hard to estimate. I would say sometimes it runs, maybe I have represented him on

five occasions or ten occasions in one year, maybe sometimes twenty."

Although he said that he could not recall whether he saw Gildenhorn in his Maryland office, he refused to say that all of the transactions were through his Washington office. He was not asked nor did he testify with reference to the interest on any transaction.

On February 14, one week before the filing of the proceeding by GI in which it contested the validity of the Gildenhorn note upon the basis of the District of Columbia "loan shark" law, a hearing was held on the application for a protective order with reference to the deposition GI wished to take of Security Bank. GI's opposition to the motion to protect stated that the matter of inquiry would be whether Gildenhorn had violated the District of Columbia "loan shark" law. At that time there was no notice under Code (1957), Art. 35, § 50 of intent to rely upon foreign law. The chancellor said:

> "The Court is of the opinion that if there are other such transactions in the District of Columbia, that is not material to this case. If this transaction was executed inconsistent with the usury provisions or the loan laws of the District of Columbia, then the Court is interested in it as to this transaction, but is not interested in it as to other transactions."

With that ruling counsel for GI said he saw no point in taking the deposition. The chancellor's ruling was correct in the then posture of the case.

The sole witness at the hearing of September 18, 1969, was James M. Proctor, vice-president of GI. He testified relative to his corporation's loan to Rollin Hills. He did not testify as to anything concerning Gildenhorn or his activities. There was an attempt at that hearing to place into the record the deposition of David E. Rozzelle, an official of Security Bank. That deposition allegedly dealt with "some ninety-nine notes and transactions over the

period of years held in the Security Bank in the District of Columbia for collection on behalf of and to the use of Mr. Gildenhorn". The deposition was taken in connection with an action in the District of Columbia. Copies of the notes were offered "for the purpose of establishing that [Gildenhorn] was in the business of lending money".

As to the Rozzelle deposition and the notes connected with it, the chancellor said:

> "[T]he Court will sustain the objection to some stranger's deposition. I know of no authority for Mr. Rozzelle's deposition, he not being a party to the proceedings, being offered as an exhibit in the case."

GI claims error in this ruling. Nothing appears in the record as to Rozzelle's place of residence. For all we know he might have resided within the shadow of the court house at Upper Marlboro. Rozzelle was not a party. There was no attempt to show that there were circumstances coming within the purview of Maryland Rule 413 a 3. Accordingly, the chancellor was correct in his ruling.

Rozzelle's deposition was the sole source of evidence as to the connection of the notes with Gildenhorn. With no properly admissible evidence before him to identify the notes and to connect Gildenhorn with them, the chancellor was correct in denying their admission.

There was placed in evidence a portion of Gildenhorn's deposition in the District of Columbia proceeding. The parties agreed upon the pages which would be admitted. Nothing in that deposition established that Gildenhorn was an individual coming within the purview of the District of Columbia statute.

Inasmuch as GI saw fit to call Gildenhorn as a witness at the January, 1967, hearing before the "loan shark" matter was an issue, the conclusion becomes inescapable that if the ninety-nine notes concerning Gildenhorn involved in the Rozzelle deposition had established Gildenhorn's activity in violation of the District of Columbia statute, GI would have called Gildenhorn to the stand in

the September, 1969, proceeding and questioned him relative to those transactions.

The burden of proof was on GI to establish its contentions. To succeed it not only was obliged to show that Gildenhorn was in the business of lending money in the District of Columbia, but in the business of lending it at an annual interest rate of more than six percent. It failed to establish the actual interest paid in any transaction other than the one in controversy, which falls far short of showing violation of the District of Columbia statute. It established that he had made some loans, but it did not establish that he was in the *business* of making loans. It failed to establish the *situs* of the loans he did make. Just as one swallow does not make a summer, a single transaction does not establish that Gildenhorn's conduct came within the purview of the District of Columbia statute.

There was no contention that the transaction was void under Maryland law. Accordingly, we find no error.

## II

GI contends that if we do not agree with it that the Gildenhorn note is wholly unenforceable, then the "usurious interest should be disallowed". It says, "[T]he opinion of the trial judge leaves appellants in doubt whether other contentions they have made are open for resolution in proceedings before the auditor. It is assumed that such issues are still open, within the rule of *Stack v. Marney*, 252 Md. 43, 248 A. 2d 880 (1969) * * *." It then goes on to ask that this issue "be decided on this record to the end that it may be resolved for the auditor and the court below, avoiding the circuity of another appeal". This Court does not give advisory opinions. In this instance the matter is before us. Interest was covered. The decree specified:

> "[T]he Court makes an express determination that there is no just reason for delay, and expressly directs the entry of judgment in accordance with this final decree * * *."

After holding that the "note, promising to pay $230,000.-00, was a valid contract between the parties", the decree states:

> "William Gildenhorn shall be allowed recovery of the value of his interest in the note secured, with proper interest and costs * * *."

Code (1957, 1966 Repl. Vol.), Art. 23, § 125 provides, "No corporation shall interpose the defense of usury in any action."

In *Rabinowich v. Eliasberg*, 159 Md. 655, 152 A. 437 (1930), our predecessors held where an applicant for a loan was told it would be made only if a corporation was formed to act as a borrower and mortgagor, which was done, that there could not be a later contention that the corporate form of the transaction was so unreal as to preclude the lender from asserting this statutory provision. The court quoted in that case from *Penrose v. Canton Nat. Bank*, 147 Md. 200, 208, 127 A. 852 (1925), where Chief Judge Bond said for the Court that the obvious purpose of the statute was "to leave lenders and corporate borrowers free to agree on any rate of interest above the regular limit".

GI relies upon *Silver v. Benson*, 227 Md. 553, 177 A. 2d 898 (1962). In *Silver* a deed was declared void by reason of fraud. Accordingly, the mortgagee could claim no title to the property, as such, since the title of his grantor had been declared to be a nullity. The mortgagee had advanced money upon the faith of the conveyance and without knowledge of the fraud. In an opinion by Judge (later Chief Judge) Henderson, this Court said, "[H]is right to compensation depends solely upon equitable considerations." Accordingly, what was allowed was the amount actually advanced by the mortgagee. The mortgagee was not permitted to recover the bonus. In this case we do not have, as in *Silver*, a mortgage or deed of trust resting upon a fraudulent conveyance.

Since the effect of the statute was "to leave lenders and corporate borrowers free to agree upon any rate of

interest above the regular limit", Rollin Hills could not challenge the validity of the transaction. It must follow that GI is not in a position to challenge its validity. No case cited by GI is an effective response to or deals with this proposition.

*Decree affirmed; appellants to pay the costs.*