REAMER *v*. KESSLER ET AL.

[No. 57, September Term, 1963.]

312

*Decided January 23, 1964.*

*Motion for rehearing filed February 22, 1964, denied March 12, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Douglas R. Due,* with whom were *Leon H. A. Pierson* and *B. Conway Taylor, Jr.,* on the brief, for the appellant.

*Thomas A. Garland* and *Charles C. W. Atwater,* with whom were *Walter C. Mylander, Jr.,* and *Mylander & Atwater* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

The mortgagees under two separate chattel mortgages brought suits against the defendant, an attorney, to recover damages resulting from his negligence in certifying that the respective corporate mortgagors under these instruments had good

title to the construction equipment purportedly covered by their respective mortgages. These cases were consolidated for trial and were tried before the court without a jury. Judgment was entered for the plaintiff or plaintiffs in each case, and the defendant appeals only as to certain items included in these judgments. He does not appeal from the finding of negligence or from liability therefor; but he does challenge the inclusion in the amount of the judgments of (a) the amount of usurious bonuses, and (b) "interest on the unpaid loans prior to trial, under the facts of this case."

One Edward Wuensche (some of whose activities previously came before this court in *United Rental Equipment Co., Inc. v. Potts & Callahan,* 231 Md. 552, 191 A. 2d 570) employed the defendant-appellant as his attorney to organize two Maryland corporations and to seek loans for them to be secured by construction equipment which Wuensche was to transfer to them. In each instance the lenders, the plaintiffs below and appellees here, obtained a certificate from the defendant attorney that the borrowing corporations had good title to the construction equipment covered by the respective chattel mortgages executed and delivered to them by the respective borrowing corporations as security for the loan. The appellant apparently relied upon what his client, Wuensche, told him and did not make such investigation as he might have made, which would have disclosed that these corporations did not acquire good title to the mortgaged equipment (with the exception of one item subject to the Kessler mortgage which was sold on foreclosure), since Wuensche, who purported to transfer the several pieces of equipment to his corporations, did not have title thereto, and that the equipment was in fact owned by third persons. The appellant was not aware of this (nor were the appellees) when the loans were effected. Some months later, when the appellant was seeking to make arrangements to refinance these loans, he discovered the mortgagors' lack of title to the equipment and advised all interested parties, including the appellees, of what he had learned.

The agreed statement of facts shows that the appellant contacted a mortgage brokerage organization and through it arranged two loans, one for each of the corporations which the

appellant had organized for Wuensche. One was a loan from Jachman and Rombro, trustees (Jachman), to Druid Hill Holding Company, Inc. in the face amount of $10,500, repayable over a period of six months, with interest at the legal rate. The other loan was from one Kessler to Hillside Construction Company, Inc. in the amount of $15,000, repayable in four months, with interest at the legal rate. The lender or lenders in each instance received out of the proceeds of the loan a bonus of 10% of the face amount thereof, that is, of $1,050 to Jachman and of $1,500 to Kessler. The appellant was paid a fee for his services directly by the borrower in connection with the Jachman loan and received a fee of $500 out of the proceeds of the Kessler loan. After the payment of mortgage brokerage commissions, appraisal fees and settlement costs (and the appellant's fee under the second loan) the respective corporate borrowers received the net amounts of $7,500 and $11,500.

The judgment in each case is based upon the full face amount of the loan and includes interest accruing after the date thereof and prior to the trial. In the Jachman case such interest is calculated from the date of the loan, which was January 12, 1961. In the Kessler case, interest from January 24, 1961, the date of the loan, to September 29, 1961, was paid out of the proceeds of a partial recovery effected by Kessler on the latter date through the foreclosure above mentioned as to one piece of equipment, and interest on the remaining unpaid balance of the face amount of the loan was allowed to the date of the trial, which was October 28, 1962. Each judgment, of course, also carries interest from its date and costs of suit.

The appellant objects to the inclusion of the bonuses in the judgments against him and to the allowance of any interest prior to the date of trial. His first contention rests upon the grounds that each bonus (a) represents usurious interest and (b) does not represent a loss to the mortgagees, since these amounts were not actually loaned. His second contention is based upon the arguments that interest is discretionary and that it would be unjust, in view of the fact that he was duped by his client (as were the appellees), to allow any interest prior to the date of trial, and that it is particularly unjust to allow interest on the amounts of the bonuses, which were never

in fact advanced to the borrowers. The appellees contend that the only issue in the case is the measure of damages, that "[t]he measure of damages in this case is the principal amount of the mortgages, with interest thereon, to the extent of the value of the security," that the value of the security exceeded this amount in each case, and that each of the judgments is correct.

Since the issue of liability is not contested on this appeal, only the amount of liability being in dispute, the basis upon which liability is founded is important only insofar as it may bear upon the measure of damages. The agreed statement of facts shows that, as a part of each loan transaction, the lenders required that the appellant certify merchantable title to the respective pieces of equipment to be in the respective corporate borrowers, and that the appellant did so certify in writing at the times of the respective closings. The trial court was of the opinion that liability might be upheld on one or more of three bases, but relied primarily upon a relationship of employment having been established as between the appellant and the lenders, under which the appellant was to examine and certify title to the lenders. We think that the above facts warrant this finding, which is not contested on this appeal; and we shall proceed on the assumption upon which the parties appear to agree, that the measure of damages is to be governed by the rules applicable to actions against attorneys or other abstracters of title by persons who have employed them to examine and certify titles.[1]

In this State it has been held that the obligation of an attorney or abstracter examining and certifying title is contractual in nature, though it has been recognized in two cases that it has ordinarily been enforced by an action on the case alleging negligence in the discharge of the professional duty of an attorney. See *Watson v. Calvert Building & Loan Ass'n,* 91

---

1. We are inclined to think that in this case the damages would be the same whether the liability of the appellant were rested upon the assumption above stated or upon a tort or a breach of warranty. To avoid a lengthy and, we think, unnecessary discussion, we do not go into this matter, except to note that insofar as the foreseeability of damages is concerned, it appears the same in either contract or tort.

Md. 25, at 33, 45 A. 879; *Wlodarek v. Thrift,* 178 Md. 453, at 468, 13 A. 2d 774; and *Corcoran v. Abstract & Title Co. of Md., Inc.,* 217 Md. 633, at 637, 143 A. 2d 808 (involving an abstract company, not an attorney, but quoting from *Watson*). See also *Kendall v. Rogers,* 181 Md. 606, 31 A. 2d 312, where the attorney for the purchasers of a farm was held not liable to the seller for telling the latter, in good faith but erroneously, that he had an obligation under a covenant of special warranty to clear up a defect in title, and the seller acted in reliance on that statement. This statement was made long after the sale had been made. The case was decided on demurrer, and the facts alleged were held insufficient to show or warrant an inference that the attorney, who was clearly acting as attorney for the purchasers, was also acting as attorney for the sellers.

The finding in the present case that the appellant was employed by the lenders to examine and certify title to the machinery for them distinguishes this case from *Kendall v. Rogers,* just cited, and also makes inapplicable the limitation stated in *Wlodarek v. Thrift, supra,* 178 Md. at 468, that "the liability of * * * attorneys [employed] to examine and pass upon a title to land is founded in contract and not on tort, and, therefore, does not, as a general rule, extend beyond the person by whom they were so employed."

In accordance with that limitation, *Wlodarek* held that a nominee to whom the purchaser under the original contract of sale caused the property to be conveyed by the vendor, could not recover for subsequent losses sustained by the nominee or his successors in title by reason of any defect in or absence of title. It was also held that the original contract purchaser, who had paid the purchase price, was entitled to recover for a total failure of title to the land purporting to be conveyed, and that "the measure of damages suffered by the purchaser, whether the title was conveyed to the purchaser or his nominee, * * * would ordinarily include the full amount of the purchase price paid by the purchaser, and interest in the discretion of the jury." (178 Md. at 468.)

In the instant case, the appellant would have us read the above passage as meaning that the purchase price paid (per-

haps with interest) *is* the measure of damages. His contention thus is, in substance, that the measure of damages should be limited to out-of-pocket payments of principal (and perhaps in other cases, plus interest thereon). That is clearly not what *Wlodarek* says. Nor is it consistent with the measure of damages stated in *Kendall v. Rogers, supra,* 181 Md. at 610-611, where the court quoted a passage from *Cochrane v. Little,* 71 Md. 323, at 331-32, 18 A. 698, which concludes as follows:

"A client who has employed an attorney has a right to his diligence, his knowledge, and his skill; and whether he had not so much of these qualities as he was bound to have, or having them, neglected to employ them, the law properly makes him *liable for the loss which has accrued to his employer.*" (Italics supplied.)

The above statement, though not the ground of decision, in *Kendall v. Rogers, supra,* is quoted from a case in which it was such a ground, and it is a clear recognition that the rule is applicable to a case involving the liability of an attorney growing out of an erroneous certification of title.

Even though the amount of the purchase price may ordinarily be the measure of damages where there is a failure of title, because the negligent party should not be charged for unforeseeable changes in the market value of property in respect of which the certificate is given, it does not follow that the party certifying to a mortgagee title to property subjected to his mortgage is not liable for the obligations purportedly secured by the mortgage.

We know of no case in this State directly in point on the facts here presented, but there are authorities in other jurisdictions which indicate to us that the proper measure of damages is the amount intended to be secured by the property made subject to the mortgage (including interest thereon), limited, however, to a sum not in excess of the value of such property. As was said in a mortgage case, *Lawall v. Groman,* 180 Pa. 532, at 540, 37 A. 98, 57 Am. St. Rep. 663: "Plaintiff is entitled to the security she contracted for, and may recover the difference in value between that and what she actually got." See also *Fay v. McGuire,* 20 App. Div. 569, 47 N. Y. Supp. 286, aff'd 162 N. Y. 644, 57 N. E. 1109; and the cases collected in a note in 5 A.L.R. 1389, at pp. 1394-95.

318

The appellant contends that the amount actually advanced, rather than the amount of the obligation secured, should govern the amount of damages. Presumably, he would also contend that his liability should be limited to the value of the property purportedly made subject to the mortgages. This contention is not set up, however, and we assume that it is not made because the value of the property supposedly made subject thereto exceeded the amount of the advances. The appellees say that the evidence shows that it exceeded the face amount of the mortgages plus interest thereon, and the appellant has not disputed this claim, which we take to be correct. The issue between the parties is thus whether damages are limited to the lenders' out-of-pocket advances (perhaps interest) or cover the value of the property purportedly mortgaged up to the amount, including interest, secured by the mortgage.

As we see it, there is no question of speculative profits involved. Each mortgage spelled out the amount which it purported to secure, and if title to the equipment purportedly mortgaged had been merchantable, as the appellant certified that it was, each of the mortgages would have been adequately secured for the full amount due thereunder. The risk of loss and the extent of possible liability were perfectly well known to the appellant when he signed and delivered the certificates of title, for he had negotiated the loans and had prepared or collaborated in preparing the documents relating thereto. The appellant was doubtless deceived as to title by his client, but he can hardly shift the burden of loss because of that deception to the lenders, to whom he gave his certificate of good title. His representation of the validity of the title which the lenders acquired to the equipment securing their respective mortgages was a direct inducement to each of them to go forward with their transactions. He knew that these loans were made with the hope and expectation of reaping large profits, and he actively sought the loans on behalf of his clients. His position was very different from that of the defrauded sellers in *Silver v. Benson*, 227 Md. 553, 177 A. 2d 898, where the defrauded sellers did not participate in the mortgage transaction there involved. In that case, which was a suit in equity, the mortgage was held enforceable against the defrauded sellers only to the

extent of the amount actually advanced on the mortgage, plus interest (with a credit against the mortgage indebtedness of amounts collected as rent). We think that the appellant here is in not nearly so favorable an equitable position as were the defrauded sellers in the case of *Silver v. Benson, supra,* and we therefore should not regard that case as applicable here, even if we were to assume that (despite the lack of any plea on equitable grounds) equitable principles would govern this suit at law.

The appellant urges very strongly that he should not be held liable for usurious interest on the mortgages here involved. He concedes that the loans were made to corporations and that corporations cannot plead usury. Code (1957), Art. 23, § 125. He also concedes that the denial of the right to plead usury extends to individuals who become accommodation endorsers, sureties or guarantors of a corporate borrower's loan contracts, citing *Penrose v. Canton National Bank,* 147 Md. 200, 127 A. 852; *Carozza v. Federal Finance Co.,* 149 Md. 223, 131 A. 332. To these may be added *Rabinowich v. Eliasberg,* 159 Md. 655, 152 A. 437. The appellant contends that he is not sued as an endorser, surety or guarantor and that he is sued upon quite a different undertaking, his liability being "based upon a failure to use due care as an attorney, with resultant loss—not upon a guarantee, express or implied, of performance by a corporation of an usurious but enforceable contract." He then denies that his "negligence occasioned loss of usurious bonuses by Appellees," and contends that even if it had, public policy would militate against imposing such a liability upon an individual. We are unable to agree that the appellant's negligent certification did not occasion loss of these bonuses to the appellees. He concedes that these mortgages were enforceable against the corporate borrowers, and we think that if title to the security for these mortgages had been as he represented it to be, the lenders could have obtained payment of the full amounts of their mortgages, including the bonuses, and interest on the full principal sums. We are likewise unable to agree with his contention (for which he cites no authority and we know of none) that public policy would militate against the enforcement against

him as an individual of the mortgagees' claims for loss due to their inability to collect these usurious bonuses because of the defects in titles which he certified to be good. Why, in connection with corporate obligations for usurious interest, an individual who incurs liability for his negligence is more entitled to protection against liability for usurious interest than one who guarantees or otherwise assumes the payment of such interest, is not made clear to us. In the instant case, we see no ground upon which to draw any such distinction, where the appellant was as thoroughly cognizant of the usurious bonuses as any endorser or guarantor of a corporate obligation could have been and was fully aware that his certificate of title itself was in the nature of a guaranty. The appellant's undertaking was that the lenders should receive good title to the equipment subject to their mortgages. The appellant's liability is measured by the absence of value in the security due to the lack of the mortgagors' title to the equipment which they purported to mortgage as compared with what would have been its value as security if the title had been good.

We agree with the appellees' conclusions as to the proper measure of damages and with the judgment of the trial court in determining the amount thereof.

*Judgments affirmed, with costs.*