H. MANNING CLAGETT ET AL. v. EDWARD A. DACY
ET AL.

[No. 139, September Term, 1980.]

*Decided October 16, 1980.*

The cause was argued before MELVIN, WILNER and COUCH, JJ.

*Thomas B. Yewell* for appellants.

*Joseph M. Roulhac,* with whom were *Ronald G. Dawson* and *Smith, Somerville & Case* on the brief, for appellees.

WILNER, J., delivered the opinion of the Court.

Appellants were the high bidders at a foreclosure sale, but because the attorneys conducting the sale failed to follow the

proper procedures, the sale was set aside. This occurred twice. Ultimately, the debtor discharged the loan, thus "redeeming" his land, and appellants lost the opportunity to acquire the property and make a profit on its resale. They sued the attorneys in the Circuit Court for Prince George's County to recover their loss, alleging that the attorneys in question owed them, as bidders, a duty to use care and diligence and to conduct the sale "properly and carefully." By sustaining the attorneys' demurrer without leave to amend, the court concluded that no such duty existed — at least not one from which an action for damages will arise; and, by affirming that order, we shall indicate our concurrence with the court's conclusion.

Appellants aver in their Declaration that (1) appellees, as attorneys, advertised two properties for foreclosure sale; (2) appellants attended the sale, made the high bid, and gave appellees a $5,000 deposit; (3) exceptions were filed by the record owner, who complained that proper notice of foreclosure had not been given as required by the Maryland Rules; (4) before the exceptions were ruled upon, appellees had the properties readvertised and conducted a second sale; (5) once again, appellants attended the sale, offered the high bid, and gave appellees a $5,000 deposit; (6) again, exceptions were filed, this time because one of the properties was "mis-addressed" and because appellees failed to notify counsel for the record owner of the date of the sale and the pay-off balance necessary to avoid foreclosure; (7) the court sustained the exceptions and declined to ratify the sale; and (8) thereafter, the record owner "redeemed" the properties from foreclosure.

Upon these allegations which, for purposes of demurrer, are assumed to be true, appellants claimed that appellees had "an obligation . . . running to the plaintiffs, as prospective bidders, to see that the sale was properly and carefully conducted . . ." and that appellants, as bidders had a right to rely on appellees "having exercised due care and diligence" in following the requisite procedures and conducting the sale properly. More pointedly, they averred that

"inasmuch as attorney's fees for the defendants

> herein were to be paid from the proceeds of sale of the property, and since plaintiffs were to be the source of the proceeds of the sale of the property . . . the defendants occupied an attorney-client relationship with the plaintiffs to the extent the plaintiffs were entitled to rely on the diligence, expertise and due care of the defendants in offering the property for sale. . . ."

It would seem from these averments that appellants were attempting to set forth alternative standings to bring this action, one based upon a duty of care and diligence flowing to them in a general sense as "successful" bidders and the other based upon the same duty owed to them as implied clients.

The traditional rule, in Maryland and elsewhere, is that an attorney's duty of diligence and care flows only to his direct client/employer, and that, whether in an action of contract or tort, only that client/employer can recover against him for a breach of that duty. The Court of Appeals adopted that view in *Wlodarek v. Thrift,* 178 Md. 453 (1940), an action for breach of contract, and in *Kendall v. Rogers,* 181 Md. 606 (1943), an action based on negligence.

In *Wlodarek,* the attorney had been employed to do a land title examination by a contract purchaser. He reported good title, and, in reliance thereon, settlement was concluded. Ultimately, the land devolved to others; and, when it appeared that the attorney's opinion was incorrect and a title defect surfaced, the question arose as to who could recover. The Court concluded (178 Md. at 468):

> "It seems generally accepted that the liability of the defendants as attorneys to examine and pass upon a title to land is founded in contract and not on tort, and, therefore, does not, as a general rule, extend beyond the person by whom they were so employed. So, when the party with whom the contract is made is the purchaser, and he causes the title to the land, after paying the purchase money, to be conveyed by the vendor to his nominee, the

subsequent loss and injury sustained by such nominee and his successors in the title, by reason of any defect in or absence of title, may not be recovered of the attorneys by such third parties as damages."

*Kendall* also arose out of a title problem. Kendall sold a farm to MacCubbin, later taking back a mortgage on it. The conveyance was by special warranty deed. When MacCubbin attempted to sell the property, a title defect was discovered, the defect arising from something that had occurred before Kendall owned the property. Under the Maryland special warranty, Kendall had no liability to MacCubbin; however, Rogers, an attorney employed by MacCubbin to clear up the problem, told Kendall, erroneously, that it was his responsibility to make the title good. Relying on that advice, Kendall expended some $3,200 to cure the defect, and then, upon discovering the truth as to his liability, sued Rogers to recover the expenditure, claiming negligence.

Adopting the tripartite test stated in *Maryland Casualty Co. v. Price*, 231 F. 397 (4th Cir., 1916), the Court said that "[i]n a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) The attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client." 181 Md. at 611-12. An attorney, said the Court, "is liable for his negligence in certifying to a title to his immediate employer only, and not to the latter's assigns or any third person, between whom and the attorney there is no privity." *Id.* at 613. Against this standard of strict privity, the Court concluded that, on the facts set forth above, there was no attorney-client relationship between Kendall and Rogers, and thus no cause of action.

The Court tacitly maintained its position regarding the need for direct privity in *Reamer v. Kessler,* 233 Md. 311 (1964). That case has little or no precedential value in the context here because (1) liability *vel non* of the attorney was conceded and therefore was not directly in issue, except in

terms of the measure of damages, and (2) he had in fact been employed by the parties plaintiff (*see* 233 Md. at 315). The significance of the case was the reliance by the Court on that second factor — employment by the plaintiffs — to distinguish *Wlodarek* and *Kendall,* thus implying the continued vitality of those cases and the doctrine enunciated in them.

The only departure from the direct privity requirement on the part of the Court of Appeals came in *Prescott v. Coppage,* 266 Md. 562 (1972), a unique case. The dispute there was between the receiver of a defunct deposit insurance company (Coppage) and the receiver of a defunct savings and loan association (Medley) that owed the insurance company certain monies. The insurance company receiver, Coppage, among other things, sued Prescott, a court-appointed special counsel to Medley, contending that due to his erroneous advice, Medley had improperly paid sums from his receivership estate to the association's depositors rather than to Coppage, who enjoyed a higher priority status. Prescott defended the action against him on a number of grounds, among which was lack of privity.

The Court of Appeals, reversing a defendant's judgment, concluded that Coppage had standing, *as a third party beneficiary,* to recover. Its reasoning was essentially as follows: all creditors of the defunct association (including Coppage) were third party beneficiaries of the receivership, and thus of Medley's activities as receiver; Prescott's court-imposed duty as special counsel was to "aid [Medley] in the performance of his duties as receiver"; thus, the creditors were also specific third party beneficiaries of Prescott's discharge of that duty and could sue to recover losses if it was discharged improperly.

Although the case has a most unusual factual setting, it does seem to suggest a modest relaxation of the strict privity requirement to the extent of allowing a true third party beneficiary to sue an attorney as he could sue any other defaulting or tortious party to a contract made for his benefit. This extension is not unique to Maryland. *See*

Annot., *Attorneys — Liability to Third Parties,* 45 A.L.R.3d 1181.

It is, however, a limited one with a special utility. It is most often seen and applied in actions based on drafting errors in wills and other such documents or on erroneous title reports — errors that, by their very nature, will likely have a long or delayed effect and will most probably impact upon persons other than the attorney's immediate employer (*see, for example, Lucas v. Hamm,* 364 P.2d 685 (Cal., 1961), *cert. den.* 368 U.S. 987; *Heyer v. Flaig,* 449 P.2d 161 (Cal., 1969); *Licata v. Spector,* 225 A.2d 28 (Conn., 1966)), although it has been applied in other contexts as well. *See Donald v. Garry,* 19 Cal. App. 3d 769 (1971) (creditor who assigned claim to collection agency for collection allowed to sue agency's attorney for negligence in prosecuting his claim).

The *Coppage* Court made clear that only those persons who qualify under the normal rules for determining third party beneficiaries will be afforded the privileged status *vis à vis* attorney defendants; *i.e.,* creditor beneficiaries. *See Shillman v. Hobstetter,* 249 Md. 678 (1968), and its citation in *Coppage,* 266 Md. at 574. This would seem to limit the extension to actions based upon contract, to which the third party beneficiary theory is peculiarly applicable, and would not supply a basis for permitting third parties to sue attorneys on a pure negligence theory — violation of some general duty arising in the absence of an underlying contractual attorney-client relationship.

In *Donald v. Garry, supra,* the California court utilized the concept expressed in Restatement of Torts 2d, § 324A,[1] to

---

1. Section 324A states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

support a third party action, concluding that "[a]n attorney may be liable for damage caused by his negligence *to a person intended to be benefited by his performance* irrespective of any lack of privity of contract between the attorney and the party to be benefited." (Emphasis supplied.) The context of this, as noted above, was an action by the true creditor against the collection agency attorney, and the court was careful to mention that "the transaction in which the respondent's negligence occurred was intended primarily for the benefit of [the creditor]. Respondent was retained to collect an account due him." [2]

Whether the action is based upon a contract (express or implied), to which the traditional rules relating to third party beneficiaries may apply, or more on a theory of negligence -- the violation of a duty not founded exclusively upon contract — there still must be shown (*i.e.*, alleged and shown) that the plaintiff, if not the direct employer/client of the defendant attorney, is a person or part of a class of persons specifically intended to be the beneficiary of the attorney's undertaking.

It will, moreover, take more than general conclusory allegations to satisfy that requirement. Attorneys are not quite the free agents as some others are in the world of commerce. There are well-recognized limitations, judicially imposed and enforced, upon how they may conduct themselves, and who they may, and may not, represent in certain situations. Except in very limited circumstances, they may not represent or act for conflicting interests in a transaction; their manifest duty of loyalty to their

2. We do not see § 324A, which speaks specifically of liability for "physical harm" to a third party, as a proper basis of liability in the type of case before us. The California courts appear to have relaxed the traditional privity requirement more than most other courts, and certainly more than the Maryland courts have to date. They have, indeed, created a balancing process, as an alternative to the strict privity or third party beneficiary requirements, in which a number of other factors are considered. *See, for example, Biakanja v. Irving*, 320 P.2d 16, 19 (Cal., 1958); *Lucas v. Hamm, supra*, 364 P.2d 685 (Cal., 1961). But even California has placed some limits on its relaxed "intended beneficiary" theory where the claimant was in an adverse or conflicting position *vis à vis* the attorney's direct client. *See, for example, Parnell v. Smart*, 66 Cal. App. 3d 833 (1977); and *cf. Rowell v. TransPacific Life Ins. Co.*, 94 Cal. App. 3d 818 (1979).

employer/client forbids it. *See, for example,* Code of Professional Responsibility, Canon 5, EC 5-14, 5-15, 5-16, 5-19, 5-22; DR 5-105.

These limitations, predominant but not necessarily exclusive with attorneys, must, of necessity, be taken into account when dealing with actions founded upon an implied duty owed by an attorney to a person who is not his direct employer/client, or upon an employment relationship alleged to arise by implication rather than by express agreement. Thus, the duties or obligations inherent in an attorney-client relationship will not be presumed to flow to a third party and will not be presumed to arise by implication when the effect of such a presumption would be tantamount to a prohibited or improbable employment, absent the clearest exposition of facts from which such an employment may be fairly and rationally inferred.

When judged against these principles, it becomes clear that the Declaration at issue here has failed to state a cause of action. It does not sufficiently allege a proper standing on the part of appellants to sue the appellee attorneys; nor, from what *is* alleged, could it do so. Appellees were engaged to represent the mortgagee (deed of trust beneficiary), not the bidders, whose interest would likely be in conflict with that of the mortgagee. The mortgagee's economic interest, and legal obligation, is to secure the highest possible price for the property, whereas the bidders' goal is to pay as little as possible. It is evident, in that circumstance, that an attorney could not lawfully represent both the mortgagee and the bidder in the transaction; and it will not be lightly presumed or inferred that appellees did so.

Nor may the prohibited employment be inferred from an allegation that appellees' fees would ultimately be paid from the proceeds of sale. The mere fact that those fees, along with the other costs of the proceeding, may be taken from the purchase price paid by the successful bidder does not mean that the purchaser is actually paying the fees. Quite the contrary. The debtor/mortgagor ultimately pays the fees and all other costs, for he gets only the net surplus (if any) available after all such fees and costs are discharged. The bidder

pays only for the property, not the cost of selling it; and he is not, therefore, the client (express or implied) of the attorney engaged to sell the property.

*Judgment affirmed; appellants to pay the costs.*